2014 UT App 144

**Conilyn JUDGE, Plaintiff and Appellant,**

v.

**SALTZ PLASTIC SURGERY, PC and Renato Saltz, Defendants and Appellees.**

**No. 20120646–CA.**

Court of Appeals of Utah.

June 26, 2014.

---

Roger H. Hoole and Gregory N. Hoole, for Appellant.

Robert G. Wright, Mark L. McCarty, Brandon B. Hobbs, and Zachary E. Peterson, for Appellees.

Judge JOHN A. PEARCE authored this Opinion, in which Judges JAMES Z. DAVIS and J. FREDERIC VOROS JR. concurred.

## Opinion

PEARCE, Judge:

¶ 1 Conilyn Judge sued her cosmetic surgeon, Dr. Renato Saltz, and his office, Saltz Plastic Surgery, PC, (collectively, Saltz) after they provided photographs of five patients, including Judge, to a television news reporter. The reporter included two photographs depicting Judge before and after her surgery in a news story broadcast on television and posted on the internet. The district court granted summary judgment to Saltz after concluding that Judge could not prevail as a matter of law on her claims of false light, publication of private facts, intrusion upon seclusion, breach of fiduciary duty, and negligent employment and supervision. Judge appeals those summary judgment orders, as well as the denial of her motion to compel discovery. We reverse the summary judgment rulings and remand for further proceedings. We affirm the denial of the motion to compel, except to the extent it sought financial information to support a claim for punitive damages, which we vacate and remand for additional inquiry.

## BACKGROUND

¶ 2 In 2006, Dr. Saltz performed cosmetic surgery on Judge's breasts and torso. Before undergoing the procedure, Judge signed a consent form that provided:

> I consent to be photographed or televised before, during, and after the operation(s) or procedure(s) to be performed, including appropriate portions of my body, for medical, scientific or educational purposes, provided my identity is not revealed by the pictures.[1]

¶ 3 In 2008, a television news reporter contacted Dr. Saltz about participating in a story focused on both the dangers of cosmetic surgery and the importance of properly selecting a cosmetic surgeon. The reporter had already identified a patient (not one of Saltz's) whose surgery had gone poorly. In pursuit of a fair and balanced story, the reporter wanted to interview a patient who had experienced a positive outcome. Because Judge was pleased with her surgery and because she works in public relations, Dr. Saltz asked her if she would be interviewed for the story. Judge agreed.

¶ 4 The interview was filmed in Dr. Saltz's office. On the day of the interview, the reporter asked Dr. Saltz to perform a mock physical examination of Judge for the camera. Judge understood this to be "B roll" footage that would be shown as background during the news story. Judge wore a patient gown for this segment but requested that she be filmed at certain angles to help ensure the footage would be appropriate and tasteful.

¶ 5 After interviewing Judge and Dr. Saltz, the reporter met with Dr. Saltz's office manager to request "before and after" photographs of Judge and other patients. Later that day, the office manager sent photographs of Judge and four other patients to the reporter. Judge's photographs were tak-

---

1. This consent form pertained to Judge's mastopexy surgery. On the same day, Judge signed a consent form for abdominoplasty surgery with functionally identical language: "I consent to the photographing or televising of the operation(s) or procedure(s) to be performed, including appropriate portions of my body, for medical, scientific or educational purposes, provided my identity is not revealed by the pictures." The parties make no distinction between the language used in each form.

en from the neck down and did not show her face, but revealed her naked body in profile from neck to upper thigh.

¶ 6 The office manager specifically indicated which photographs were of Judge, writing to the reporter, "Here are Coni's before pictures" and "here are Coni's after pictures." The news organization used Judge's photographs in television broadcasts and in an online story. The organization redacted portions of the photographs for broadcast by superimposing black bars over a portion of Judge's bust and pelvis. During the story, as the "before" image morphed into the "after" image; the reporter identified Judge, stating, "this is Coni before; this is Coni after." When Judge learned that her photographs had been broadcast, she complained, and the news organization excised her pictures from the online version of the story.

¶ 7 Judge filed suit, initially naming Dr. Saltz, his office, and the news organization as defendants.[2] Her causes of action against the Saltz defendants were false light, publicity of private facts, intrusion upon seclusion, breach of fiduciary duty, and negligent employment and supervision. During discovery, Judge sought evidence from Saltz regarding consent forms signed by other patients whose photographs were given to the reporter, Saltz's annual advertising budget and related documents for each year from 2003 to 2008, and Saltz's "balance sheets and tax returns for the past five years." The district court ruled that these items were irrelevant to Judge's claims and denied her motion to compel their production.

¶ 8 The district court dismissed all of Judge's claims in a series of rulings. Saltz first moved for summary judgment on Judge's false light claim, asserting that Judge had not adequately pleaded special damages. The district court agreed and granted summary judgment to Saltz on that cause of action.

¶ 9 Saltz next moved for summary judgment on Judge's publicity of private facts and intrusion upon seclusion claims. The district court ruled that Judge had not established a prima facie case for publication of private

facts. It concluded that Saltz had not publicized a fact, because there was "no evidence to establish that the release of photographs to [the reporter] would necessarily mean that the photographs were substantially certain to be made public through a communication to the public at large." The court also determined that Saltz had not disclosed a private fact about Judge. The court reasoned that Judge had at times worn a bikini in public and thus could not "claim that parts of her body that she ha[d] left open to the public eye are now private facts." The court further found that Judge had "voluntarily placed these facts before the public and gave the public a legitimate interest in viewing the photographs by appearing on television to inform the public about choosing a good plastic surgeon and by making representations about her surgical results."

¶ 10 The district court also ruled that Judge could not present a prima facie case for intrusion upon seclusion. It concluded that Judge had "consented to the use of her photographs for an educational purpose," that Judge had admitted that the news story had an educational purpose, and that there was "no notation on any [photograph] that would identify" Judge. The district court therefore granted summary judgment to Saltz on the publicity of private facts and intrusion upon seclusion causes of action.

¶ 11 Saltz then moved for summary judgment on Judge's remaining claims—breach of fiduciary duty and negligent employment and supervision. The district court's order did not directly discuss the elements of these causes of action; rather, the court restated its earlier conclusions that the undisputed evidence showed that Judge had consented to the release of her photographs for educational purposes, that the news story had an educational purpose, that Judge had disclosed her identity by introducing herself to the reporter, and that the photographs showed no more of Judge's body than she had previously "displayed in public while wearing a bikini."

2. Judge eventually settled with the news organization and dismissed her claims against it.

¶ 12 Judge appeals the summary judgments on her five causes of action and the denial of her motion to compel discovery.

## ISSUES AND STANDARDS OF REVIEW

¶ 13 Judge contends that the district court erred in granting Saltz's summary judgment motions. On appeal from a district court's summary judgment ruling, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party" and review the court's "legal conclusions and ultimate grant or denial of summary judgment for correctness." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

■ ¶ 14 Judge also contends that the district court erred in denying her motion to compel discovery. "We review the grant or denial of a motion to compel discovery under an abuse of discretion standard." *Aurora Credit Servs., Inc. v. Liberty West Dev., Inc.*, 2006 UT App 48, ¶ 3, 129 P.3d 287.

## ANALYSIS

### I. Genuine Issues of Material Fact Preclude Summary Judgment.

■ ¶ 15 Judge contends that the district court erred in granting summary judgment to Saltz on each of her five causes of action. "[A] district court should grant summary judgment only when, viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Suarez v. Grand County*, 2012 UT 72, ¶ 18, 296 P.3d 688 (omission in original) (citation and internal quotation marks omitted). While a plaintiff facing summary judgment "is entitled to all favorable inferences, [the plaintiff] is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture." *Ladd v. Bowers Trucking, Inc.*, 2011 UT App 355, ¶ 7, 264 P.3d 752 (citation and internal quotation marks omitted). However, "it only takes one sworn statement ... to dispute the averments on the other side of the controversy and create an issue of fact." *Draper City v. Estate of Bernardo*, 888 P.2d 1097, 1101 (Utah 1995); *see Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 32, 116 P.3d 323. For ease of analysis, we discuss each cause of action separately.

### A. False Light

¶ 16 Judge contends that summary judgment on her false light cause of action was inappropriate because the district court erred in ruling that she had "failed to adequately plead special damages." The district court noted that Judge's opposition to the motion for summary judgment did not respond to this issue and instead cited to deposition testimony that she claimed raised issues of fact. Accordingly, the district court declined to "address whether [Judge's] claimed deposition testimony rises to the level of a material fact because [Judge] failed to plead special damages in her claim of False Light." [3]

---

**3.** Judge has not challenged the district court's determination that a plaintiff alleging the tort of false light needs to plead and prove special damages. Our supreme court has noted that false light is "closely allied" with a defamation action and that "the same considerations apply" to both claims. *Jacob v. Bezzant* 2009 UT 37, ¶ 21, 212 P.3d 535 (citation and internal quotation marks omitted). However, the supreme court has not explicitly addressed whether a requirement to plead special damages is one of the "same considerations" in a defamation claim that applies to false light.

Looking to other jurisdictions, we find that some states appear to require special damages to be pleaded as an element of a false light claim, while others do not. *Compare, e.g., Fellows v. National Enquirer, Inc.*, 42 Cal.3d 234, 228 Cal. Rptr. 215, 721 P.2d 97, 105–09 (1986) (in bank) (holding that a false light claim requires pleading and proof of special damages), *and Schaffer v. Zekman*, 196 Ill.App.3d 727, 143 Ill.Dec. 916, 554 N.E.2d 988, 994 (1990) (holding that "a claim for false-light invasion of privacy ... requires the pleading of special damages") *with West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 648 (Tenn.2001) (while "plaintiffs seeking to recover on false light claims must specifically plead and prove damages allegedly suffered," they "need not prove special damages, [because] evidence of injury to standing in the community, humiliation, or emotional distress is sufficient"), *and Cabaniss v. Hipsley*, 114 Ga.App. 367, 151 S.E.2d 496, 504 (1966) (noting that "general damages are recoverable without proof of special damages" in false light claims). *See also* Russell

¶ 17 "Special damages are a particular type of damages which are a natural consequence of the injury caused but are not the type of damages that necessarily flow from the harmful act." *Hodges v. Gibson Prods. Co.*, 811 P.2d 151, 162 (Utah 1991). Rule 9(g) of the Utah Rules of Civil Procedure requires that "when items of special damage are claimed, they shall be specifically stated." Special damages must be pleaded with enough specificity "that the opposing party has an adequate opportunity to defend against the plaintiff's claims." *Hodges,* 811 P.2d at 162. However, the plaintiff need not plead a specific dollar amount, and our supreme court has held that a complaint seeking "damages for lost wages . . . and severe emotional distress" has sufficiently pleaded special damages. *Id.*

¶ 18 Judge's complaint alleged that she had sustained damages in the form of lost wages and emotional distress:

> As a further direct and proximate result of the conduct of Saltz and [the news organization], Ms. Judge has suffered, and will continue to suffer, economic losses, including, but not limited to, (1) the loss of income, consulting fees, employment and future earning capacity caused by the harm to her reputation, . . ., and (2) [losses] caused by mental anguish, shock, horror, grief, physical sickness, shame or anger that may inhibit her ability to work, all to her special damage in a reasonable sum.

Even assuming, without deciding, that Utah law requires the pleading of special damages in a false light claim, we cannot agree that Judge failed to do so.

¶ 19 On appeal, Saltz asserts that summary judgment is nevertheless appropriate because, with Saltz's emphasis, "[Judge] cannot produce *any* evidence to show that she lost *any* profits." Saltz relies on the depositions of three executives employed by two companies for which Judge had worked

as a consultant. Those executives testified that they had not reduced the amount of work assigned to Judge's consulting business as a result of the broadcast. They also stated that any reduction that did occur was due to budgetary constraints. In effect, Saltz argues that the sworn depositions of these executives foreclose any factual dispute as to their reasons for reducing Judge's workload.

¶ 20 We disagree. In those same depositions, the executives also testified that Judge's professionalism and good judgment were cast into doubt as a result of the broadcast, that those qualities were important for consultants working for their companies, and that other workers had expressed "uncertainty and unease" at the prospect of continuing to work with Judge after her photographs had been broadcast.[4] One deponent admitted that Judge's loss of work was "unfortunate but not unexpected" after the broadcast. A director of marketing testified that she was "shocked and dismayed to see [her] hired communications consultant" portrayed that way on television.

¶ 21 Judge presented evidence that employees of these companies had watched the online version of the story in two different staff meetings. An executive also testified that the reaction to the story was "shock and awe" and that her company was less inclined to hire Judge. In her own sworn deposition, Judge testified that she was considered for fewer projects after the broadcast and that "it felt to me like there was a significant change in the level of work that I did for them" despite the companies appearing to "spend[ ] money as they have in the past."

¶ 22 On this record, reasonable minds could reach different conclusions as to why Judge received less work after her photographs were broadcast. Because a factual question exists with respect to the existence of special damages, we reverse the grant of

G. Donaldson, Annotation, *False Light Invasion of Privacy—Defenses and Remedies,* 57 A.L.R.4th 244, § 27[a], [b] (1987) (collecting cases and suggesting that Utah is among those states that do not require the pleading of special damages). In light of the foregoing, and due to the lack of briefing on the issue, we will assume without deciding that the district court correctly conclud-

ed that the tort of false light requires that special damages be pleaded and proved.

4. At least one of the executives testified that it was the publication of the photographs, and not Judge's willingness to be interviewed for the story, that concerned him.

summary judgment in favor of Saltz on Judge's false light cause of action.

## B. Publication of Private Facts

■ ¶ 23 Judge next contends that the district court erred in granting summary judgment on her publication of private facts cause of action. To prevail on that cause of action, Judge needs to establish that Saltz (1) publicly disclosed (2) a private fact (3) "that would be highly offensive and objectionable to a reasonable person." *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380 (Utah Ct.App.1997) (citation and internal quotation marks omitted). Section 652D of the Restatement (Second) of Torts adds an additional consideration: that the public had no legitimate interest in having the information made available.[5] The district court determined that Judge had not pointed to evidence demonstrating that Saltz publicly disclosed the photographs or that the photographs disclosed a private fact. It also determined that the public had a legitimate interest in viewing the photographs in their redacted form.

■ ¶ 24 The district court correctly ruled that the tort of public disclosure of a private fact requires a plaintiff to prove that the private fact has been disclosed publicly. Generally, "it is not an invasion of the right to privacy ... to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." Restatement (Second) of Torts § 652D cmt. a (1977). However, the number of people to whom the disclosure is made is not determinative; "[p]ublic disclosure means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be *substantially certain* to become one of public knowledge." *Shattuck–Owen v. Snowbird Corp.*, 2000 UT 94, ¶ 12, 16 P.3d 555 (emphasis added) (citation and internal quotation marks omitted). The key question here is thus whether the

communication was made in such a way that it was substantially certain the fact would become public.

■ ¶ 25 The district court's ruling stated, "There is no evidence to establish that the release of photographs to [the reporter], who was preparing an educational program on plastic surgery, would necessarily mean that the photographs were substantially certain to be made public through a communication to the public at large." However, this is inherently a question of fact. A factfinder could very reasonably and sensibly conclude that giving photographs to a reporter, at the request of that reporter, knowing that the reporter was preparing a story on the topic, made it "substantially certain" that the photographs would be published. *See Shattuck–Owen*, 2000 UT 94, ¶ 12, 16 P.3d 555; *see also Uintah Basin Med. Ctr. v. Hardy*, 2008 UT 15, ¶ 19, 179 P.3d 786 ("A district court is precluded from granting summary judgment if the facts ... support more than one plausible but conflicting inference on a pivotal issue in the case...." (citation and internal quotation marks omitted)); *cf. Virgil v. Time, Inc.*, 527 F.2d 1122, 1127 (9th Cir.1975) (noting, in another context, that "[t]alking freely to a member of the press ... can be said to anticipate that what is said will be made public since making public is the function of the press"); *Doe v. Young*, No. 4:08CV197, 2009 WL 3680988, at *9 (E.D.Mo. Oct. 30, 2009) (finding "Defendants should have been on notice that producing the disc containing Plaintiff's [medical] photographs to a reporter without an agreement governing the use of the photographs could and in fact did lead to communication to the general public and caused the photographs to be publicly disclosed to the general public").

¶ 26 The district court also ruled that the photographs did not disclose a private fact. It reasoned that "[t]he redacted photos showed portions of [Judge's] body that she revealed when wearing a bikini in public" and

---

5. The Utah Supreme Court has yet to decide whether Utah law has incorporated this concept. *See Shattuck–Owen v. Snowbird Corp.*, 2000 UT 94, ¶ 11 n. 1, 16 P.3d 555 ("In light of our holding, we need not decide whether to adopt this requirement as an element of the invasion of privacy tort we address today."). Nevertheless,

because the district court's ruling focused in part on this element in reaching its decision, we will assume without deciding that to survive summary judgment Judge had to identify a genuine issue of material fact as to whether the public had a legitimate interest in having the information published.

concluded that Judge "cannot claim that parts of her body that she has left open to the public eye are now private facts."[6] The district court's language derives from the Second Restatement of Torts:

> Similarly, there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye. Thus he normally cannot complain when his photograph is taken while he is walking down the public street and is published in the defendant's newspaper.... On the other hand, when a photograph is taken without the plaintiff's consent in a private place, or one already made is stolen from his home, the plaintiff's appearance that is made public when the picture appears in a newspaper is still a private matter, and his privacy is invaded.

Restatement (Second) of Torts § 652D cmt. b (1977).

¶ 27 Cases applying this section of the Restatement often involve the publication of a photograph taken of a person in or from a public place. For example, the United States District Court for the Southern District of Florida dismissed a publication of private facts claim asserted on behalf of the minor granddaughter of talk show host Johnny Carson. *See Heath v. Playboy Enterprises, Inc.*, 732 F.Supp. 1145, 1149 (S.D.Fla. 1990). That court granted summary judgment, noting that the photograph at issue had been taken in front of the Broward County Courthouse. *Id.* Citing the Restatement, the court concluded that because the photograph had been taken in a public place, it did not reveal a private fact as a matter of law. *Id.; accord Savely v. MTV Music Television*, No. 11–1021, 2011 WL 2923691, at *1, *4 (D.N.J. July 18, 2011) (dismissing a publication of private facts action predicated on the broadcast of a video showing plaintiff drumming in a New York subway station). These cases have recognized that, under the Restatement, a person who appears in public should reasonably anticipate that publicity of her appearance or actions could result.

¶ 28 Here, the district court extended the Restatement's reach beyond the holdings of those cases. Saltz did not disclose a photograph of Judge that had been taken in a public place. Judge's photograph had been taken in a private location, her doctor's office. The district court determined, however, that because those private photographs revealed no more than Judge had previously disclosed publicly, that, like someone whose picture is snapped while in front of a courthouse or in a public subway station, she had no cause of action. We believe that this stretches the Restatement too far for two reasons.

¶ 29 First, the Restatement itself recognizes that the context of the disclosure matters. The Restatement distinguishes between someone whose picture is taken "while he is walking down the public street" (who "normally cannot complain") and someone whose photograph "is taken without ... consent in a private place" (whose "privacy has been invaded"). The district court's application of the Restatement eliminated the significant distinction between someone who reveals a fact in a location and manner where it could be reasonably anticipated to be made public and someone who maintains some reasonable expectation of privacy. The former can be said to have left their private facts "open to the public eye," while the latter may not have.

¶ 30 Second, when the fact at issue is someone's appearance, it bears noting that appearances are not static. Appearances can change. A college student may decide to play on the "skins" side of a "shirts versus skins" basketball game in a public park. By doing so, he may have made a public fact of what his torso looked like on that day in that park such that publication of a picture taken while he was playing would not be actionable. But by doffing his shirt, he would not lose the ability to argue that a future picture of his torso exposes a private fact. Our shirtless basketball player may be willing to make a

---

6. On summary judgment, Saltz asserted, based on Judge's ex-husband's testimony, that Judge had previously worn a bikini in public and that the redacted photographs used in the news story had revealed "portions of skin" that would be revealed by a bikini. Judge did not contest this assertion, which appears factually suspect unless Judge had publicly worn a censor bar shaped bikini.

public fact of his exercise-honed torso in his twenties but swim with his shirt on thirty years later to avoid revealing extra pounds, medical scars, or now-regretted tattoos. The district court's analysis would regard the torso at various points in time as the same "fact" when in reality they are lamentably different.

¶ 31 Similarly, Judge may have been willing to make a public fact of what she looked like in a certain bikini on a certain day in a certain context. By so doing, she did not lose her ability to argue that whatever parts of her body that bikini revealed were private facts on different days in different contexts. Genuine issues of material fact remain and the district court erred in deciding that Judge's redacted photographs revealed no private fact as a matter of law.

¶ 32 The district court further ruled that "[t]he public had a legitimate interest in [Judge's] redacted photographs" because Judge "voluntarily placed these facts before the public ... by appearing on television to inform the public about choosing a good [cosmetic] surgeon and by making representations about her surgical results." The question of whether a private person creates a legitimate public interest in the private details of her life when she publicly addresses an issue of public concern appears to be a matter of first impression in Utah.

¶ 33 The Ninth Circuit Court of Appeals addressed a somewhat similar situation in *Virgil v. Time, Inc.*, 527 F.2d 1122 (9th Cir. 1975). There, a body surfer consented to be interviewed by a reporter writing an article about prominent surfers, but the surfer " 're-voked all consent' upon learning that the article was not confined solely to testimonials to his undoubted physical prowess." *Id.* at 1124. The article discussed his apparent illiteracy and included stories about his antics at parties, as well as apparent admissions to public intoxication, assault, and unemployment-compensation fraud. *Id.* at 1124 n. 1. The publisher moved for summary judgment, but the district court denied that motion. *Id.* at 1123. On appeal, the *Virgil* court recognized that, with regard to people whose activities have become matters of legitimate public interest, "[t]o hold as [a] matter of law

that private facts [about such people] are also within the area of legitimate public interest could indirectly expose everyone's private life to public view." *Id.* at 1131; *see also Gilbert v. Medical Econ. Co.*, 665 F.2d 305, 308 (10th Cir.1981) ("Even where certain matters are clearly within the protected sphere of legitimate public interest, some private facts about an individual may lie outside that sphere.... Because each member of our society at some time engages in an activity that fairly could be characterized as a matter of legitimate public concern, to permit that activity to open the door to the exposure of any truthful secret about that person would render meaningless the tort of public disclosure of private facts."); *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 959 (9th Cir.2013) ("The newsworthiness inquiry focuses on the particular fact at issue that was disclosed, not on the general topic of the publication."); *Toffoloni v. LFP Publ'g Grp., LLC*, 572 F.3d 1201, 1212 (11th Cir.2009) (holding that "every private fact disclosed in an otherwise truthful, newsworthy publication must have some substantial relevance to a matter of legitimate public interest" (emphasis omitted)).

¶ 34 The *Virgil* court ultimately concluded that the determination of whether the private facts were sufficiently related to a matter of public interest to have themselves become matters of public interest necessarily implicated "factual questions ... respecting the state of community mores." 527 F.2d at 1131; *see also Winstead v. Sweeney*, 205 Mich.App. 664, 517 N.W.2d 874, 877–78 (1994) (collecting cases and concluding that the trial court should have determined "whether reasonable minds could differ concerning whether the information published about [the] plaintiff was of legitimate public interest"). The *Virgil* court held that the district court's summary judgment ruling had not sufficiently explained why no factual questions existed as to (1) the extent to which private facts regarding the surfer were matters of legitimate public interest and (2) whether the identity of the surfer "as the one to whom such facts apply" was also a matter of legitimate public interest. 527 F.2d at 1131.

¶ 35 Like the Ninth Circuit Court of Appeals, we hold that when presented with a motion for summary judgment predicated on a claim of legitimate public interest, a district court must determine if reasonable minds could differ as to whether the private facts have become matters of legitimate public interest.[7] Here, the district court confined its analysis to a single line: "Plaintiff voluntarily placed these facts before the public and gave the public a legitimate interest in viewing the photographs by appearing on television to inform the public about choosing a good plastic surgeon and by making representations about her surgical results." On the record before us, we conclude that reasonable minds could differ on whether appearing on television to discuss cosmetic surgery gives rise to a legitimate public interest in viewing explicit photographic documentation of the results of the interviewee's surgery.

¶ 36 For these reasons, we reverse the district court's summary judgment in favor of Saltz on Judge's publicity of private facts cause of action.

## C. Intrusion Upon Seclusion

¶ 37 Judge contends that the district court erred in granting summary judgment to Saltz on her intrusion upon seclusion cause of action. A cause of action for intrusion upon seclusion requires the plaintiff to demonstrate (1) an intentional substantial intrusion, physical or otherwise, upon the plaintiff's solitude (2) that would be highly offensive to the reasonable person. *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct.App.1997).

¶ 38 The district court ruled that Saltz did not intentionally intrude upon Judge's solitude or seclusion because Judge consented to the use of her photographs for educational purposes and Judge admitted the news story was created for an educational purpose. The court also concluded that "[t]here is no notation on any photo that would identify [Judge]."

¶ 39 These findings turn on the interpretation of the consent form Judge signed. The pertinent portion of the form provides:

> I consent to be photographed or televised before, during, and after the operation(s) or procedure(s) to be performed, including appropriate portions of my body, for medical, scientific or educational purposes, provided my identity is not revealed by the pictures.

Although Judge consented to having her pictures taken, the consent form never explicitly mentions the *release* of any of the photographs to third parties. Whether the parties intended the consent to implicitly allow the disclosure of the photographs under these circumstances is an ambiguity in the agreement and therefore presents an issue of fact. *See Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990) ("When ambiguity does exist [in a contract,] the intent of the parties is a question of fact to be determined by the jury.").

¶ 40 Furthermore, questions of fact exist concerning what the parties intended the term "educational purposes" to mean. The district court dealt with this issue by concluding that Judge had admitted that the news story served an educational purpose and that therefore the photographs had been released for an educational purpose. Although Judge's counsel admitted that the news story "was created for an educational purpose," he also stated "[w]hat we argue is that the pictures were not." Thus, Judge never conceded that the photographs advanced an educational purpose within the meaning of the consent form. Issues of fact remain as to what the parties intended the consent's language to mean. In addition, the relevant inquiry is not whether the underlying news story served an educational purpose but whether the release of Judge's photographs to the reporter promoted an educational purpose within the meaning of the consent form.

---

7. This is not to suggest that a district court could never determine that a legitimate public interest exists as a matter of law. There may well be cases where reasonable minds could not differ on whether the public had a legitimate interest in having certain private information made available.

¶ 41 Accordingly, questions of fact exist as to whether Judge's written consent extended to the release of photographs to third parties under these circumstances and whether the release of the photographs served an "educational purpose" as the parties intended that term.

¶ 42 A further question of fact exists as to whether Saltz's disclosure improperly revealed Judge's identity pursuant to the terms of her consent. The consent form contains the limiting clause "provided my identity is not revealed by the pictures." The reporter requested Judge's before and after photographs, and Saltz released the photographs to the reporter in two emails that included the phrases "Here are Coni's before pictures" and "[H]ere are Coni's after pictures." While the photographs themselves did not necessarily reveal Judge's identity, Saltz's additional notations did, and it is undisputed that the news organization understood the photographs to be of Judge and identified them as such during its story. Thus, the question before the district court was the interplay between any implied authorization in the consent form to release Judge's photographs and the language "provided my identity is not revealed by the pictures." While the language of the consent form may reasonably be interpreted to be a prohibition on depicting Judge's face, it could also be read as forbidding Saltz from providing identifying information with the photographs. Accordingly, a question of fact exists as to what the consent form proscribes.

¶ 43 Because questions of fact exist as to the meaning of the consent form and the resulting scope of Judge's consent, summary judgment in favor of Saltz on Judge's intrusion upon seclusion claim—predicated on a determination that Judge consented to Saltz's release of her photographs—was inappropriate. We therefore reverse the district court's summary judgment on this issue.

D. Breach of Fiduciary Duty and Negligent Employment and Supervision

¶ 44 Judge next contends that the district court erred in granting summary judgment on her two remaining claims. The district court's ruling relies upon its determi-nations that Judge consented to having photographs taken before and after surgery for educational purposes, that the news story was an educational program, and that the news story "showed no more of [Judge's] body than she admitted that she displayed in public while wearing a bikini." We have already determined that unresolved factual questions should have precluded these deter-minations. For the reasons discussed above, these factual disputes should have prevented the grant of summary judgment on these causes of action as well. Consequently, we reverse the district court's grant of summary judgment on these claims.

II. The District Court Did Not Abuse Its Discretion in Denying Judge's Motion to Compel Two Categories of Discovery but Failed to Conduct the Statutory Inquiry Required for Discovery Relating to Punitive Damages.

¶ 45 Judge further contends that the district court erred in denying her motion to compel discovery. She identifies three categories of information that she argues she was entitled to discover. First, she sought contact information for other patients whose photographs were released to the news organization. She argues that deposing these patients would allow her to establish that the consent form did not authorize the release of Judge's photographs. Second, Judge sought information about Saltz's advertising expenditures for the previous six years, along with "each and every document related to ... promotion or advertisement" in the same time period. She argues that this information is relevant to establish the benefit of the news story to Saltz. Third, Judge sought Saltz's balance sheets and tax returns for the previous five years. She argues that she is entitled to discover this information because she has established a prima facie case for punitive damages discovery.

¶ 46 The district court denied Judge's motion to compel these discovery responses, ruling that Saltz's "tax records, advertising, and patient records do not make [Judge's] claims more probable than without it." *Cf.* Utah R. Evid. 401 (evidence is relevant if it has any tendency to make a fact of conse-

quence "more or less probable than it would be without the evidence").

¶ 47 District courts have broad discretion in discovery matters. *Green v. Louder*, 2001 UT 62, ¶ 37, 29 P.3d 638. *But see State ex rel. Road Comm'n v. Petty*, 17 Utah 2d 382, 412 P.2d 914, 918 (1966) ("The use of discovery . . . should be confined within the proper limits of enabling the parties to find out essential facts for [their] legitimate objective[s]. . . ."). The district court's rulings as to Judge's requests for the names of other patients whose photographs were disclosed and information concerning Saltz's advertising budget fell within the court's range of discretion.[8]

¶ 48 In ruling on the discovery aimed at unearthing Saltz's financial condition, the district court neglected to undertake a necessary inquiry. The Utah Code provides that "[d]iscovery concerning a party's wealth or financial condition may only be allowed after the party seeking punitive damages has established a prima facie case . . . that an award of punitive damages is reasonably likely." Utah Code Ann. § 78B–8–201(2)(a) (LexisNexis 2012). If this is disputed, the district court must also be "satisfied that the discovery is not sought for the purpose of harassment." *Id.*

¶ 49 Judge's initial complaint sought punitive damages, apparently in connection with her cause of action for breach of fiduciary duty. *Cf. Holladay v. Storey*, 2013 UT App 158, ¶ 45, 307 P.3d 584 (noting that a claim for breach of fiduciary duty can serve as a basis for punitive damages). However, the district court's minute entry denying discovery of Saltz's tax returns—evidence of wealth or financial condition—revealed that the court considered only whether that information was relevant to prove Judge's underlying causes of action. Accordingly, we vacate that decision and remand so the district court may consider whether the balance sheets and

tax returns are discoverable pursuant to Utah Code section 78B–8–201(2)(a).

¶ 50 We hold that factual questions exist with respect to Judge's causes of action against Saltz for false light, publicity of private facts, intrusion upon seclusion, breach of fiduciary duty, and negligent employment and supervision. We therefore reverse all five summary judgment rulings and remand for further proceedings. We affirm the denial of the motion to compel, except with respect to the request for financial information aimed at establishing punitive damages, which we vacate and remand for the district court to consider whether such information is discoverable under Utah Code section 78B–8–201(2)(a).

¶ 51 Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

accordingly, we have reversed the summary judgments in favor of Saltz. Because there is no longer any final order in this matter, the district court retains the discretion to "reconsider or decline to reconsider" its discovery rulings. *See id.*

---

8. We note, however, that the district court "has the discretionary power to reconsider or decline to reconsider its decisions within a case before entering final judgment." *Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 40, 221 P.3d 205. Here, we have determined that factual questions exist on all five of Judge's causes of action and,