2014 UT App 259

# THE UTAH COURT OF APPEALS

JAMES GILES,
Plaintiff and Appellee,
*v.*
MINERAL RESOURCES INTERNATIONAL, INC.,
Defendant and Appellant.

Opinion
No. 20130694-CA
Filed October 30, 2014

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 110907786

Zane S. Froerer and Paul H. Johnson, Attorneys
for Appellant

Donald L. Dalton, Attorney for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

PEARCE, Judge:

¶ 1    This appeal concerns a breach of fiduciary duty claim that was the subject of a successful summary judgment motion. Mineral Resources International, Inc. (MRI) challenges the district court's grant of summary judgment in favor of James Giles and award of attorney fees to Giles. The district court ruled that MRI had not presented sufficient evidence of actual damages caused by the alleged breach of the duty Giles owed MRI. On appeal, MRI contends that it presented sufficient evidence of damages to survive summary judgment. MRI further contends that even if the evidence of actual damages was insufficient, summary judgment was inappropriate because MRI

claimed it was entitled to nominal damages. Lastly, MRI posits that the award of attorney fees was improper because the underlying attorney fees clause was part of a contract between Giles and MRI and the breach of fiduciary duty claim sounded in tort rather than contract.

¶ 2    "On appeal from a district court's summary judgment ruling, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and review the court's legal conclusions and ultimate grant or denial of summary judgment for correctness." *Judge v. Saltz Plastic Surgery, PC*, 2014 UT App 144, ¶ 13, 330 P.3d 126 (citation and internal quotation marks omitted).

¶ 3    MRI employed Giles from 1995 to 2010 as an international sales representative. Giles signed non-compete and non-disclosure agreements that MRI prepared. MRI assigned Giles to handle sales in Asia and the Pacific Rim. During this time, Giles developed a strong relationship with a regional distributor, HCI, which sold MRI's products in the Philippines. HCI and MRI entered into a five-year broker agreement in September 2003.

¶ 4    MRI's product line included the dietary supplement Concentrated Mineral Drops. In February 2008, Giles helped HCI file an application to use a logo depicting the stylized letters "CMD" as a trademark. MRI started using the CMD trademark for its Concentrated Mineral Drops "no later than July of 2008."[1] In September 2009, MRI discovered HCI's trademark application and confronted Giles about it. Giles claimed that HCI had filed the application on behalf of MRI and that HCI would resolve the situation by allowing its application to lapse. The application did

---

1. Presumably, MRI's plans to use the CMD trademark predated HCI's application and Giles was aware of those plans when he helped HCI apply for the trademark.

not lapse until the spring of 2012, although HCI apparently took no further action to advance the application.

¶ 5    In December 2009, MRI asked Giles to sign a revised non-compete agreement, but he refused. Giles then terminated his employment with MRI in February 2010. In November 2011, Giles brought an action seeking a declaration that the original non-compete agreement was unenforceable. MRI filed a counterclaim against Giles combined with a third-party complaint naming ten John Does as defendants. Giles moved to dismiss the combined counterclaim and third-party complaint. After a hearing in February 2012, the district court dismissed without prejudice MRI's third-party complaint and the breach-of-contract portion of MRI's counterclaim. The remainder of the counterclaim is the breach of fiduciary duty cause of action currently before us on appeal.[2] At a June 2013 hearing, the district court noted that MRI had not conducted any discovery in the nineteen months since the case had been filed in November 2011. The district court ruled that the claimed damages were "all speculation" and that there was no evidence "to support the claim that somehow Mr. Giles is responsible for the loss of sales." It therefore granted Giles's motion for summary judgment and awarded him attorney fees. MRI appeals those decisions.

## I. Actual Damages

¶ 6    MRI first contends that the district court erred in determining that MRI had failed to present sufficient evidence of actual damages caused by Giles's actions. We review this

---

2. The parties have also litigated a contentious contract dispute that was the subject of another appeal. *See generally Giles v. Mineral Resources International, Inc.*, 2014 UT App 37, 320 P.3d 684.

determination for correctness. *Judge v. Saltz Plastic Surgery, PC*, 2014 UT App 144, ¶ 13, 330 P.3d 126. To prove a breach of fiduciary duty claim, a plaintiff must demonstrate that the defendant owed a duty, the defendant breached the duty, the plaintiff suffered damages, and the plaintiff's damages were actually and proximately caused by the defendant's breach. *See Christensen & Jensen, PC v. Barrett & Daines*, 2008 UT 64, ¶ 23, 194 P.3d 931. The district court did not address the first three elements, because it determined that no reasonable finder of fact could conclude that Giles's actions caused the damages MRI alleged.

¶ 7      "Proximate cause is an issue of fact." *Harline v. Barker*, 854 P.2d 595, 600 (Utah Ct. App. 1993). Where summary judgment is sought due to a lack of evidence of causation, such judgment is appropriate "only if there is no evidence upon which a reasonable jury could infer causation." *Id.* However, "[o]n appeal from a district court's summary judgment ruling, we view the facts and all *reasonable* inferences drawn therefrom in the light most favorable to the nonmoving party." *Judge*, 2014 UT App 144, ¶ 13 (emphasis added) (citation and internal quotation marks omitted). Reasonable inferences must be more than speculation and conjecture. *State v. Cristobal*, 2010 UT App 228, ¶ 7, 238 P.3d 1096. "It is well established that an inference would be unreasonable if it would permit a jury to base its verdict on mere speculation and conjecture." *Owen v. Burcham*, 599 P.2d 1012, 1019 (Idaho 1979) (citing cases from three federal circuits). "While a plaintiff facing summary judgment 'is entitled to all favorable inferences, [a plaintiff] is not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture.'" *Judge*, 2014 UT App 144, ¶ 15 (quoting *Ladd v. Bowers Trucking, Inc.*, 2011 UT App 355, ¶ 7, 264 P.3d 752). "Plaintiffs therefore must spin together myriad facts into a durable thread that *reasonably* connects defendant's breach to plaintiffs' injury." *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1292 (Utah Ct. App. 1996) (emphasis added).

¶ 8    MRI argued that Giles breached his fiduciary duties in 2008 by helping HCI file the trademark application and that it was "reasonable to conclude" that Giles's actions "directly contributed to creating a conflict between" MRI and HCI. MRI claims that this conflict caused HCI to reduce its orders from MRI by ten percent between 2010 and 2011 and by approximately fifty percent between 2011 and 2012. In 2013, after the onset of this litigation, HCI stopped communicating with MRI and instead announced plans to buy similar products from a different company.[3] MRI admitted that it was "not certain exactly what portion of . . . lost sales" could be attributed to Giles's actions but asserted that "it is reasonable to conclude that [those] actions were a substantial factor in losing [HCI] as a customer, and that [MRI] has suffered damages as a result."

¶ 9    The district court ruled that MRI had not established sufficient facts to allow a reasonable jury to infer causation. According to the district court, the causal thread between Giles's actions and the alleged damages was "all speculation." The court stated that it could not "find any proximate cause here that Mr. Giles is responsible" for MRI's loss of sales to HCI.[4] On appeal, MRI renews its assertion that Giles "assist[ed] [HCI] in breaching their broker agreement with MRI in an apparent attempt to 'pirate' one of MRI's most valuable trademarks." MRI argues that the trademark dispute "created a reasonable inference—based on circumstantial evidence—that Giles took actions during the period of his employment with MRI . . . which ultimately resulted in MRI losing [HCI] as a customer."

---

3. MRI claims that this new supplier was "affiliated with Giles."

4. As previously noted, the district court was also troubled that MRI had "done absolutely nothing in this case as far as discovery in 19 months."

¶ 10    The district court did not err in determining that these speculative and conclusory claims are insufficient to permit a reasonable finder of fact to conclude that the alleged breach actually caused the alleged damages. Viewing the facts in the light most favorable to MRI, Giles helped HCI file a trademark application in 2008 that infringed on MRI's intellectual property. Giles left MRI in 2010, and any contractual obligation he owed MRI expired two years later. In 2013, HCI decided to stop buying MRI's products after placing progressively smaller orders with MRI for the two preceding years. MRI has adduced no evidence linking HCI's purchasing decisions to Giles's role in the trademark application. Instead, MRI speculates that Giles's assistance in 2008 may have fueled a slow-burning conflict that resulted in a loss of business some four years later. These events, standing alone, are too far removed in type and time for a reasonable inference to be drawn that one caused the other. It follows that MRI has not carried its burden on appeal of demonstrating error in the district court's determination.

## II. Nominal Damages

¶ 11    MRI next contends that the district court inappropriately granted summary judgment, because MRI demonstrated at least the possibility that it was entitled to pursue an award of nominal damages. MRI's argument in support of this contention is limited to a single sentence:

> Moreover, even if the Court of Appeals were to determine that MRI's claimed damages were too speculative to meet the standard necessary to prove proximate cause in this case, and accordingly, that MRI did not meet its burden to avoid summary judgment on the issue of compensatory damages, MRI has the right to proceed with its claim of breach of fiduciary duty against Giles, and to seek a judgment for nominal damages.

MRI provides a string citation to five cases but does not analyze those cases or explain how they are analogous to the instant case.

¶ 12　Rule 24(a)(9) of the Utah Rules of Appellate Procedure requires an appellant to support its brief with citations to the authorities relied upon. "Case law applying this rule makes clear that it requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority." *Hale v. Big H Constr., Inc.*, 2012 UT App 283, ¶ 51, 288 P.3d 1046 (citation and internal quotation marks omitted). "Citing relevant provisions and cases without any meaningful analysis of this authority falls short." *Id.* (citation and internal quotation marks omitted). *Cf. Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 6, 330 P.3d 762 ("An appellate court should not be asked to . . . save an appeal by remedying the deficiencies of an appellant's brief."). MRI's single-sentence contention in this regard inadequately briefs an otherwise interesting question of law. MRI has failed to carry its burden of persuasion on appeal. We reject MRI's nominal-damages argument for that reason alone.

¶ 13　But even if we were to reach the merits of this claim, it is far from clear that Utah law allows a plaintiff alleging breach of fiduciary duty to proceed to trial purely on the issue of nominal damages. The cases in MRI's string citation do not address whether Utah law would permit a breach of fiduciary duty claim to proceed solely on nominal damages. The first three cases MRI cites sounded in contract. *Foote v. Clark*, 962 P.2d 52, 53 (Utah 1998); *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 670 (Utah 1982); *Snyderville Transp. Co. v. Christiansen*, 609 P.2d 939, 940 (Utah 1980). The fourth case involved the tort of trespass. *Boyer v. Boyer*, 2008 UT App 138, ¶ 22, 183 P.3d 1068. And the fifth involved a claim for wrongful use of civil proceedings. *Gilbert v. Ince*, 1999 UT 65, ¶ 1, 981 P.2d 841.

¶ 14　Generally, "[n]ominal damages are not recoverable in cases in which actual damages are an element of the cause of

action and [the] plaintiff has failed to prove those damages." 1 Stein on Personal Injury Damages Treatise § 1:3 (3d ed. 2014). "In such a case, nominal damages are not awarded, because the plaintiff has failed to prove one essential element in his or her cause of action," *id.*, namely, that actual damages were sustained. However, courts in other jurisdictions are split on the availability of nominal damages in breach of fiduciary duty cases. *Compare, e.g.*, *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n*, No. 10-cv-02349-WJM-KMT, 2014 WL 811566, at *5 (D. Colo. March 3, 2014) (district court's order explaining that "nominal damages for non-economic harm, where no actual damages exist, are not available for a breach of fiduciary duty under Colorado law"), *AMERCO v. Shoen*, 907 P.2d 536, 542 (Ariz. Ct. App. 1995) ("We have no basis for concluding that, in the absence of actual damage or unjust enrichment, Nevada would encourage internecine corporate litigation by permitting a nominal damage claim."), *John E. King & Assocs. v. Toler*, 675 S.E.2d 492, 496 (Ga. Ct. App. 2009) ("[P]laintiffs must still show some injury to prevail on a breach of fiduciary duty claim."), *and Nelson v. Alliance Hospitality Mgmt., LLC*, No. 11 CVS 3217, 2013 WL 4506222, at *10 (N.C. Super. Ct. Aug. 20, 2013) (North Carolina business court's order ruling that Georgia law applied and noting that under Georgia law "nominal damages are only available upon a showing of injury" (citations and internal quotation marks omitted)), *with, e.g.*, *Continuum Condo. Ass'n v. Continuum VI, Inc.*, 549 So. 2d 1125, 1127 (Fla. Dist. Ct. App. 1989) ("[N]ominal damages can be awarded where a legal wrong has been proven, but the aggrieved party suffered no damages . . . ."), *and Brian E. Weiss, D.D.S., PC v. Miller*, 564 N.Y.S.2d 110, 111 (N.Y. App. Div. 1990) ("[N]ominal damages will be awarded to a plaintiff where the law recognizes a technical invasion of his right or a breach of defendant's duty, but where the plaintiff has failed to prove actual damages or a substantial loss or injury to be compensated."). This split may be partly attributable to courts' occasional use of "the term 'nominal damages' broadly to describe situations where . . . plaintiffs experienced actual

damages insusceptible to reasonable calculation." *Chimney Rock*, 2014 WL 811566, at *5 (citation and internal quotation marks omitted).

¶ 15   In short, MRI has failed to cite, much less to properly analyze and explain, any authority demonstrating that it was entitled to pursue a breach of fiduciary duty claim in the absence of proof of actual damages. Consequently, MRI has not met its burden on appeal of showing error in the district court's ruling on nominal damages.

### III. Attorney Fees

¶ 16   MRI next contends that the district court erred in awarding attorney fees to Giles because there was no contractual basis for doing so. We review the propriety of an award of attorney fees for correctness. *Jones v. Riche*, 2009 UT App 196, ¶ 1, 216 P.3d 357.

¶ 17   "As a general rule, attorney fees are recoverable only if authorized by contract or statute." *Hahnel v. Duchesne Land, LC*, 2013 UT App 150, ¶ 16, 305 P.3d 208 (citation and internal quotation marks omitted).[5] "If the legal right to attorney fees is

---

5. The Utah Supreme Court has noted that breach of fiduciary duty is "a well-established exception to the American rule precluding attorney fees in tort cases generally." *Campbell v. State Farm Mut. Auto. Ins. Co.*, 2001 UT 89, ¶ 122, 65 P.3d 1134, *rev'd on other grounds*, 538 U.S. 408 (2003). However, *Campbell* discussed whether attorney fees were recoverable by a prevailing plaintiff who demonstrated a breach of fiduciary duty. Here, neither party argues that the exception *Campbell* articulates should apply to this dispute, in which the prevailing party defeated a breach of fiduciary duty claim. Given our resolution of the case before

(continued...)

established by contract, Utah law clearly requires the court to apply the contractual attorney fee provision and to do so strictly in accordance with the contract's terms." *Id.* (citation and internal quotation marks omitted). We "first look to the writing alone to determine its meaning and the intent of the contracting parties." *Id.* (citation and internal quotation marks omitted).

¶ 18    The non-compete agreement Giles signed provided that Giles would not compete with MRI for two years following the termination of his employment and that he would not share or use MRI's trade secrets.[6] The non-compete agreement also provided, "If *any legal action* arises under this agreement or

---

us on other grounds, we need not answer that unbriefed question.

6. The operative terms of the non-compete agreement stated:

> The undersigned shall not engage in designing, manufacturing, and selling of any products or services that are similar to our [sic] compete with the present products or MRI and those products or services under design, production, marketing, directly or indirectly for himself or herself or in behalf of or in conjunction with, any other person, firm, partnership, entity, or corporation, within the United States of America, or in the country(ies) or Nation(s) where the undersigned is providing a service for MRI, for the period of two (2) years immediately following the termination of contractual or other working arrangements with MRI, or the full extent of the law, which ever [sic] is applicable for said services, regardless of the reason for termination or the party initiating termination, and as to information which is properly a trade secret of MRI.

*relating thereto, . . .* [t]he prevailing party shall be entitled to costs and reasonable attorney's fees . . . ." (Emphases added.) A non-disclosure agreement that Giles signed the same day contained a similar provision.

¶ 19   Giles sought a declaratory judgment that certain provisions within the agreements were unenforceable and thus invalid—an action that arose from or related to the agreements. MRI brought two counterclaims against Giles: a claim for breach of fiduciary duty (the Fiduciary Duty Claim) and a claim for injunctive relief on the basis of the agreements (the Contract Claim). The Contract Claim was eventually dismissed without prejudice, and Giles prevailed on summary judgment on the Fiduciary Duty Claim. The district court awarded attorney fees to Giles, prompting MRI to request clarification of the basis for the award. The court stated that the written agreements allowed for an award of attorney fees to a prevailing party and that Giles had prevailed in the lawsuit. MRI argued that Giles had prevailed only on the Fiduciary Duty Claim and that that claim was not related to the non-compete and non-disclosure agreements. The district court disagreed and awarded attorney fees of $9,547.50 to Giles.

¶ 20   On appeal, MRI asserts that the Fiduciary Duty Claim did not arise "under the non-competition agreement between the parties and was not related thereto. Rather, it was an action based strictly on a tort theory . . . ." According to MRI, the Fiduciary Duty Claim was "based solely on the agency/employment relationship of the parties, independent of the contract between the parties." MRI explains that it did not "assert in [the Fiduciary Duty Claim] any type of violation of the non-compete/non-disclose agreement." Accordingly, MRI argues that "any attorney's fees expended by Giles in litigating [the Fiduciary Duty Claim] did not tangibly relate to any breach of contract claims that may have been originally asserted."

¶ 21   But the attorney fees provisions at issue are not limited to litigation arising from the contract claims. Rather, they are broadly worded and allow an award of such fees to the "prevailing party" in "any legal action aris[ing] under . . . or relating" to the non-compete and non-disclosure agreements. Under this broad contractual language, attorney fee awards are not limited to the specific claims a party prevails upon but instead may be awarded to the party who prevails in an action that arises out of or relates to the agreements. *Cf. Energy Claims Ltd. v. Catalyst Inv. Group Ltd.*, 2014 UT 13, ¶¶ 11, 45, 325 P.3d 70 (holding that a breach of fiduciary duty claim fell within the scope of a contract's forum selection clause, which provided that "'[a]ny dispute, controversy or claim arising out of or related to the agreement shall be brought exclusively before the courts of England [and] Wales,'" because the clause's language did not "support a distinction between contract claims and tort claims" (alterations in original)).

¶ 22   We conclude that MRI's claims constituted a legal action arising under the agreements. There is no question that Giles's suit seeking declaratory relief freeing him from the agreements is properly understood as a legal action arising under or relating to those agreements. Nor is there any doubt that the Contract Claim portion of MRI's counterclaim was also a legal action arising under the agreements. To describe the manner in which Giles "misuse[d] his position of employment and MRI's confidential proprietary information or trade secrets . . . for his own purposes, to the detriment of MRI," the Contract Claim incorporated by reference all of the material allegations of the Fiduciary Duty Claim. MRI itself characterized both claims as mandatory counterclaims, i.e., claims that arose out of the same transaction or occurrence as Giles's declaratory-relief action. *See* Utah R. Civ. P. 13(a). MRI has not convinced us that the dismissal of a portion of that counterclaim—the Contract Claim—could retroactively change the nature of the filing. We therefore conclude that the Contract Claim and the Fiduciary Duty Claim were filed together as a "legal action aris[ing]

under" the agreements "or relating thereto" and that, as the prevailing party in the action, Giles was entitled to an award of attorney fees.

¶ 23   Finally, it is not clear that the district court awarded fees only for Giles's defense of the Fiduciary Duty Claim. Although the Contract Claim was dismissed before the summary judgment hearing, Giles incurred the expense of his attorney researching, drafting, and filing a motion to dismiss it. He was therefore entitled to recover "costs and reasonable attorney's fees" for those actions under the non-compete agreement.[7]

¶ 24   In light of these considerations and under these facts, MRI has not carried its burden of demonstrating error in the district court's decision to award attorney fees to Giles.

¶ 25   Giles requests an award of his attorney fees incurred on appeal. Generally, a party that received attorney fees below and prevails on appeal is entitled to fees reasonably incurred on appeal. *See Giles v. Mineral Resources International, Inc.*, 2014 UT App 37, ¶ 12 n.4, 320 P.3d 684. Here, the district court awarded Giles attorney fees, and we affirm that award and the district court's grant of summary judgment. Accordingly, we also determine that Giles is entitled to an award of his attorney fees reasonably incurred on appeal. We remand to the district court with instructions to ascertain the amount of those fees and enter a judgment awarding them.

––––––––––

7. On appeal, MRI does not challenge the district court's calculation of the amount of the attorney fees award.