[Cite as *Petroff v. HDV Cleveland, L.L.C.*, 2025-Ohio-4672.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MICHAEL G. PETROFF,  :

    Plaintiff-Appellee,  :

                         No. 114734

    v.  :

HDV CLEVELAND LLC, ET AL.,  :

    Defendants-Appellants.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 9, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-105487

---

### *Appearances:*

Zagrans Law Firm LLC and Eric H. Zagrans, *for appellee*.

Keating Muething & Klekamp, PLL and Alison M. Huenefeld; Steptoe LLP and Stephen J. Newman, pro hac vice, *for appellants* American Express National Bank, American Express Travel Related Services Company, Inc., and American Express Company.

---

LISA B. FORBES, J.:

{¶ 1} Defendants-appellants American Express National Bank, American Express Travel Related Services Company, Inc., and American Express Company (together "American Express") appeal from a decision of the Cuyahoga County

Common Pleas Court denying their motion to compel arbitration in a civil action filed against them by plaintiff-appellee Michael G. Petroff ("Petroff"). For the reasons that follow, we reverse the decision and remand to the trial court with instructions to grant the motion and enter an order staying proceedings pending arbitration.

## I. Facts and Procedural History

{¶ 2} On October 15, 2024, Petroff filed a civil complaint against American Express and two other entities not party to this appeal: HDV Cleveland, LLC dba Larry Flynt's Hustler Club, and Deja Vu Services, Inc. (collectively, "Hustler Club").

{¶ 3} According to the complaint, on the evening of October 14, 2022, Petroff visited the Hustler Club in Cleveland, Ohio with a friend. Petroff alleges that while he was there, he was either overserved alcohol or drugged by a substance placed in one or more of his drinks, causing him to lose consciousness. During this period, Petroff's American Express credit card was allegedly stolen and used without his consent. The complaint states that multiple unauthorized charges totaling $61,354.50 were made to Petroff's account. Petroff claimed he did not discover the theft until the following morning when he noticed his credit card was missing. He alleged that the charges were fraudulent and made by one or more employees or agents of the Hustler Club without his knowledge, consent, or authorization.

{¶ 4} Petroff further alleged in his complaint that American Express wrongfully denied his request to reverse the disputed charges without conducting a

thorough fraud investigation and that it wrongfully canceled his account after he refused to pay the disputed charges.

{¶ 5} Based on these allegations, Petroff asserted claims of fraud, conversion, and civil theft against the Hustler Club and claims of breach of contract and negligence against American Express.

{¶ 6} On December 6, 2024, American Express filed a motion to compel arbitration of Petroff's claims against American Express and to stay or dismiss the proceedings pending the outcome of arbitration. In support of their motion, American Express argued that under an arbitration clause in Petroff's Cardmember Agreement, either party could elect to arbitrate disputes and American Express was choosing to exercise that right.

{¶ 7} Petroff opposed the motion to compel on two grounds. First, he contended that the Cardmember Agreement was ambiguous regarding whether he could opt out of arbitration, because it contained two different arbitration provisions: one contained in a section titled "Claims Resolution" and another contained in a section titled "Claims Resolution for Covered Borrowers." The "Claims Resolution" section required arbitration at either party's request unless the cardmember opted out within 45 days of receiving the card. In contrast, the "Claims Resolution for Covered Borrowers" section did not obligate the cardholder to arbitrate at American Express's request, rather it allowed the cardholder to unilaterally reject American Express's request to arbitrate at any time. Petroff

argued it was unclear which provision applied to him as the cardholder under the agreement.

{¶ 8} Second, Petroff argued that regardless of which arbitration clause applied, his claims fell outside the scope of both provisions. He maintained that the arbitration requirement only extended to claims arising from his authorized use of the card. According to Petroff, because the underlying charges were unauthorized, he asserted that the arbitration clauses were inapplicable.

{¶ 9} On December 31, 2024, the trial court entered an order summarily denying the motion to compel.

{¶ 10} American Express appeals that decision, raising the following single assignment of error: "The trial court erred in denying the motion to compel arbitration brought by defendants American Express National Bank, American Express Travel Related Services Company, Inc., and American Express Company."

## II. Law and Analysis

### A. Standard of Review

{¶ 11} Petroff does not dispute that he is party to a valid Cardmember Agreement with American Express and that the Cardmember Agreement includes the arbitration provisions at issue. The only question in this appeal is whether Petroff is not obligated to arbitrate his claims against American Express either because the agreement is ambiguous as to his requirement to arbitrate or because his claims against American Express do not fall within the scope of the mandatory arbitration provision because the charges were allegedly unauthorized.

{¶ 12} The Cardmember Agreement has a choice-of-law provision. It states that Utah law and federal law govern the agreement and the account. Further, each arbitration provision of the Cardmember Agreement states that it is governed by the Federal Arbitration Act ("FAA"). Where there is a choice-of-law provision in a contract, the chosen jurisdiction governs the substantive issues of law including the rights of the parties to the contract and how the contract is interpreted, while the law of the forum state governs procedural issues. *See Al-Foutiyou v. N. Am. Islamic Trust, Inc.*, 2025-Ohio-2750, ¶ 23 (10th Dist.), citing *Choice Hotels Internatl., Inc. v. C&O Developers, L.L.C.*, 2022-Ohio-3234, ¶ 14-16 (8th Dist.). What this means is that Utah law governs the contract formation of the Cardmember Agreement including whether any terms may cause ambiguity as to the rights of the parties, while federal law governs the arbitration provisions themselves including whether a particular dispute falls within the scope of the arbitration provision. *See id.*; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62-64 (1995) (The state choice-of-law provision covers the rights and duties of the parties to the contract, while the FAA choice-of-law provision in the arbitration clause covers the arbitration clause.); *Credit Acceptance Corp. v. Beard*, 2024-Ohio-4799, ¶ 13 (8th Dist.) (where arbitration provision specifically states it is governed by the FAA, the FAA applies to that provision). Ohio law then governs the procedural issue of whether the trial court properly or improperly denied American Express's motion to enforce arbitration. *See id.*

{¶ 13} When reviewing the denial or grant of a motion to compel arbitration, "the appropriate standard of review on appeal depends on 'the type of questions raised challenging the applicability of the arbitration provision.'" *Skerlec v. Ganley Chevrolet, Inc.,* 2012-Ohio-5748, ¶ 6 (8th Dist.), quoting *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543, ¶ 7 (8th Dist.). Where the question raised involves factual issues invoking a trial court's discretion, such as whether a party has waived its right to arbitrate, an abuse of discretion standard applies to the trial court's decision. *See Milling Away L.L.C. v. UGP Props. L.L.C.*, 2011-Ohio-1103, ¶ 10 (8th Dist.). Where, however, the question is a legal one, such as the interpretation of a written contract, then the trial court's determination is subject to de novo review. *See Choice Hotels Internatl., Inc.* at ¶ 19.

{¶ 14} The arguments raised by the parties in support of, or against, compelling arbitration involve the interpretation of the Cardmember Agreement. Accordingly, we apply a de novo standard of review to the trial court's decision to deny American Express's motion to enforce arbitration, with the understanding that the formation of the contract and the scope of the arbitration provisions are governed by Utah and federal law, respectively. "'De novo review encompasses an independent examination of the record and law without deference to the underlying decision.'" *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, ¶ 48 (8th Dist.), quoting *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443, ¶ 22 (8th Dist.).

**B. Ambiguity**

{¶ 15} The Cardmember Agreement contains two arbitration provisions. The first, found within the section of the agreement titled "Claims Resolution," provides for mandatory arbitration at either party's election. In relevant part, it states:

> You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.

> If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. [1]

{¶ 16} The second arbitration provision, titled "Claims Resolution for Covered Borrowers," provides for optional arbitration for those referred to as "covered borrowers." In relevant part, it states:

> You may elect, but are not required, to resolve any claim by individual arbitration. We may also request to resolve any claim by individual arbitration, but you are not required to accept our request. Claims are decided by a neutral arbitrator.

> If you elect or agree to resolve a claim through arbitration, your or our right to litigate that claim in court or have a jury trial on that claim may be limited. Further, you and we may not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration.

---

[1] The Cardmember Agreement defines "we," "us," and "our," as American Express and its affiliates, while defining "you," and "your" to mean the person who applied for and opened the account.

{¶ 17} The "Claims Resolution for Covered Borrowers" section does not define who or what a "covered borrower" is. However, a section titled "Military Lending Act," which precedes both the "Claims Resolution" and "Claims Resolution for Covered Borrowers" sections in the agreement, states:

> Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee (other than certain participation fees for a credit card account). . . *If you are a covered borrower, the Claims Resolution section of this Agreement will not apply to you in connection with this Account. Instead, the Claims Resolution for Covered Borrowers section will apply.*

(Emphasis added.)

{¶ 18} Petroff argued before the trial court that the two arbitration provisions cited above create ambiguity regarding whether arbitration is mandatory or merely optional, because it is unclear whether he qualifies as a "covered borrower" under the second, nonmandatory arbitration clause.[2] We disagree that there is ambiguity as to which arbitration provision applies to Petroff.

---

[2] On appeal, Petroff no longer argues that the agreement is ambiguous. To the contrary, in response to American Express's argument on appeal that the Cardmember Agreement is not ambiguous, Petroff asserts, "He does not contend or argue . . . that the relevant contractual terms are ambiguous or otherwise require contractual interpretation." However, because it is unclear whether the trial court denied American Express's motion to compel arbitration based on Petroff's prior ambiguity argument and because the issue was raised by American Express, we address the issue of ambiguity in our de novo review.

{¶ 19} As discussed above, the Cardmember Agreement is governed by a Utah choice-of-law provision. However, "[a] choice-of-law determination is unnecessary if the laws of each forum would reach the same result." *Choice Hotels Internatl., Inc.*, 2022-Ohio-3234, at ¶ 16 (8th Dist.). In this case, the principles of contract interpretation under Utah and Ohio law are materially the same.

{¶ 20} Under both Utah and Ohio law, courts look to the language of the contract itself to discern the intent of the parties. *See Rawcliffe v. Anciaux,* 2017 UT 72, ¶ 29; *Corder v. Ohio Edison Co.,* 2024-Ohio-5432, ¶ 10. In doing so, courts consider the agreement as a whole, interpreting provisions in relation to one another. *See Rawcliffe* at ¶ 29; *Corder* at ¶ 14. Ambiguity exists when a term or provision is susceptible to more than one *reasonable* interpretation. *See Judge v. Saltz Plastic Surgery, P.C.,* 2016 UT 7, ¶ 24; *Corder* at ¶ 14. Whether a term or provision is capable of more than one reasonable interpretation is context dependent and depends on the language of the contract as a whole. *See Mind & Motion Utah Invests., L.L.C. v. Celtic Bank Corp.,* 2016 UT 6, ¶ 24 ("[P]roffered alternative interpretations 'must be plausible and reasonable in light of the language used.'"), quoting *First Am. Title Ins. Co. v. J.B. Ranch, Inc.,* 966 P.2d 834, 837 (Utah 1998); *Corder* at ¶ 14 (When "one of the two competing interpretations 'strain[s] ordinary usage or conflict[s] with the structure or purpose of the text as a whole,' then that interpretation is not reasonable and does not make the contractual text ambiguous," quoting *Corder v. Ohio Edison Co.,* 2020-Ohio-5220, ¶ 38 (DeWine, J., concurring in part and dissenting in part).).

{¶ 21} Here, there is no ambiguity regarding the term "covered borrower," such that Petroff could reasonably believe that he fell within the "Claims Resolution for Covered Borrowers" section's nonmandatory arbitration provision.  Looking at the agreement as a whole, the only time the term "covered borrower" is mentioned is within the section titled "Military Lending Act," which appears prior to both the "Claims Resolution" and "Claims Resolution for Covered Borrowers" sections found later in the agreement.  Under the "Military Lending Act" section, the term "covered borrower" refers specifically to members of the Armed Forces and their dependents who are covered under the Military Lending Act.  Petroff does not allege that he is either a member of the Armed Forces or a dependent covered under the Act.  Therefore, the term "covered borrower" does not apply to him, and the nonmandatory arbitration provision in the "Claims Resolution for Covered Borrowers" section is inapplicable.

## C. Scope of the Mandatory Arbitration Provision

{¶ 22} Petroff further maintains that he is not obligated to arbitrate the present dispute because the terms of the Cardmember Agreement — including the arbitration clause within the "Claims Resolution" section — exclude the underlying lawsuit from binding arbitration.  Specifically, Petroff argues that the Cardmember Agreement governs *his* use of the American Express card and the charging privileges granted to *him* by American Express.  Since, according to Petroff, the charges in question were unauthorized, he claims that the terms of the Cardmember Agreement, including the arbitration provision, do not apply here.  We do not agree.

{¶ 23} To begin, nowhere in the Cardmember Agreement does it state that the provisions of the agreement are inapplicable when there is a dispute over whether charges were authorized by the cardholder. On the contrary, the agreement expressly contemplates the possibility of unauthorized or fraudulent charges and advises on how those are to be handled — at least preliminarily — by the parties. For instance, under the section titled "Using the Card," cardholders are advised to contact American Express immediately if the card is lost, stolen, or being used without the cardholder's permission. Similarly, under "Declined Transactions," the cardholders are advised that a charge may be declined by American Express for certain reasons, one of them being suspected fraud.

{¶ 24} While the Cardmember Agreement includes a "Promise to Pay" section, which states that the account holder agrees to pay for the charges they make, the charges they authorize others to make, and the charges made by additional cardmembers or permitted users, this section neither states nor implies that claims based on allegedly unauthorized charges are exempt from arbitration.

{¶ 25} Additionally, the plain language of the arbitration clause supports a finding that claims related to allegedly unauthorized charges and American Express's handling of the same are indeed subject to arbitration. The "Claims Resolution" section of the Cardmember Agreement, which includes the mandatory arbitration provision, begins with the following explanation:

> Most customer concerns can be resolved by calling our Customer Service Department at the number listed on the back of your card. In the event Customer Service is unable to resolve a complaint to your

satisfaction, this section explains how claims can be resolved through mediation, arbitration or litigation. It includes an arbitration provision. **You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase. See Your Right to Reject Arbitration below.**[3]

For this section, you and us includes any corporate parents, subsidiaries, affiliates or related persons or entities. **Claim** means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. **Claim** includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account. . . .

{¶ 26} The above-quoted language makes clear that the arbitration provision applies broadly to any current or future claim, dispute, or controversy relating to Petroff's American Express account and Cardholder Agreement. It also makes clear that claims subject to arbitration include, but are not limited to, contract and tort claims against American Express arising under a cardholder account and/or the Cardholder Agreement.

{¶ 27} In this case, Petroff filed a complaint against American Express asserting claims of breach of contract and negligence in connection with American Express's handling of his account. Specifically, Petroff alleged that American Express violated the Cardmember Agreement and acted negligently by "refusing to

---

3 We note that Petroff did not provide written notice to American Express timely rejecting the arbitration provision.

honor [his] claims and contentions that he did not make $61,354.50 worth of charges on one night at the Club" and for its failure to "conduct a thorough investigation into" the alleged fraud. These claims fall squarely within the scope of the arbitration provision set forth in the "Claims Resolution" section of Petroff's Cardmember Agreement with American Express. Accordingly, he is obligated to arbitrate the dispute.

## III. Conclusion

{¶ 28} For the reasons stated above, we reverse the trial court's decision denying American Express's motion to compel arbitration. We remand the matter with instructions to grant the motion and issue an order staying the proceedings pending the outcome of arbitration.

{¶ 29} Judgment reversed and remanded.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

EILEEN A. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR